# Exhibit D

# JONES DAY

NORTH POINT • 901 LAKESIDE AVENUE • CLEVELAND, OHIO 44114.1190
TELEPHONE: +1.216.586.3939 • FACSIMILE: +1.216.579.0212

Direct Number:  (216) 586-1247
tfraelich@JonesDay.com

JP315436:cmg
599928-055006

April 7, 2016

VIA EMAIL (NODAM@GTLAW.COM) AND REGULAR MAIL

Masahiro Noda
Greenberg Traurig
MetLife Building
200 Park Avenue
New York, NY  10166

Re:    PILL POCKETS Matter

Dear Mr. Noda:

I have consulted with my client and we have reviewed the matters raised in your letter in significant detail.  After careful consideration, we do not believe that a likelihood of confusion will occur as the result of my client's distribution and sale of its MILK BONE pill pouches.

We closely compared the front of the packages for similarities and found nothing that we believe will result in any confusion.  As we discussed on the phone, my client's package prominently displays its MILK-BONE trademark and your client prominently displays its GREENIES marks.

 

NAI-1500930794v2

JONES DAY

Masahiro Noda
April 7, 2016
Page 2

Additionally, as you assert in your letter to Mr. Ekonomon, there is a "well-established family of famous GREENIES trademarks." I daresay that among pet owners, the MILK-BONE trademark is an even more well established and famous mark. As you may be aware, the MILK-BONE mark has been used in connection with dog treats since 1908 and the mark was first registered in 1926. Over the years, various marks in the family of MILK-BONE marks have been registered with the United States Trademark Office no less than two dozen times. In short, we believe that the enormous fame attached to both your client's GREENIES mark and my client's MILK-BONE mark will do much to obviate any potential for confusion in these circumstances.

Moreover, as you can confirm from the above photos, my client uses the words "pill pouches" descriptively and the appearance of those words differs starkly from the use of the PILL POCKETS mark on your client's packaging. For example, (1) the words appear on one line, instead of two, as is the case with your client's mark; (2) the words are in an entirely different lower case font; (3) the color of the words differs from those used in connection with your client's mark; and (4) your client's words are outlined in a brown line and appear joined with the GREENIES mark to create a unitary design mark.

On a related note, we have reviewed your client's Registration No. 3,869,170 which covers the trade dress used in connection with various products sold by your client. In reviewing the description of the trade dress set forth in some detail in that Registration, we could find nothing in the trade dress for the MILK-BONES pill pouches product that resembles the GREENIES trade dress. For your convenience, the description set forth in your client's Registration reads as follows:

> The color(s) green, tan, brown, white, orange and black is/are claimed as a feature of the mark. The mark consists of packaging for the goods containing a highly stylized green and tan double "U" shape, with an orange oval placed at the base of the inner "U" such that the orange oval overlaps with the green color of the outer "U" and the tan color of the inner "U". Inside the tan colored inner "U" is the word "GREENIES" displayed in arched green lettering; below that, the head of a brown, black, and white dog with a green dog treat in its mouth and a green leaf behind it; below that, the image of a green dog treat and below that, the aforementioned orange oval. A white tooth wrapped in a green ribbon appears in the lower left corner of the tan colored inner "U".

JONES DAY

Masahiro Noda
April 7, 2016
Page 3

Similarly, I compared the back of the two packages and the differences are also very obvious.  The distinctions in the colors, layout, content and overall appearance of the backs of the two packages are quite significant.  We also carefully compared the "Directions for Use" on my client's package to the "Feeding Guidelines" on your client's package.  While there are some similarities necessarily tied to conveying to consumers the intended use of both products, we did not see anything that we regard as problematic.  Please see the side by side comparisons of the back of the two packages below.



Of course, these products will not be offered to the relevant consuming public in a vacuum and we note that there are many similar products offered for sale in the marketplace by others.  Please see the pictures below.

JONES DAY

Masahiro Noda
April 7, 2016
Page 4





JONES DAY

Masahiro Noda
April 7, 2016
Page 5






JONES DAY

Masahiro Noda
April 7, 2016
Page 6



These products all use a package of similar size and shape and most utilize the image of a dog on the front of the package. There is also a description of how the product is to be used on the back of all these packages and these "directions" are similar to those found on the back of the packages of our clients' respective products. Moreover, all of these other products use the word "pill" in the name of the product. Significantly, however, none of these other products prominently use a famous, well known house mark such as MILK-BONE or GREENIES on the packaging. In sum, a review of the packaging for these other, similar products from third parties also informs our belief that confusion is very unlikely to occur between the products of our respective clients.

JONES DAY

Masahiro Noda
April 7, 2016
Page 7

Be assured that my client assiduously observes the intellectual property rights of others, but it sincerely believes that there has been no violation of your client's rights in this instance, for all of the reasons discussed above.  Please feel free to contact me should you have any comments or questions regarding the foregoing.

Sincerely,

Timothy P. Fraelich