IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

MARS, INCORPORATED, *et al.*,

    Plaintiffs,

v.

THE J.M. SMUCKER
COMPANY, *et al.*,

    Defendants.

Civil Action No. 1:16-cv-01451

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment.

This case arises from a claim for trademark infringement brought by Plaintiffs Mars, Incorporated and Mars Petcare US, Inc. (collectively, "Mars") against Defendants The J.M. Smucker Company and Big Heart Pet, Inc. (collectively, "Smucker"). Both parties manufacture their own line of special dog treats designed for pet owners to hide medication for administration to their pets. Mars produces Pill Pockets, a product sold under Mars's GREENIES brand. The name Pill Pockets is a registered trademark of Mars. Smucker, conversely, produces Pill Pouches under its MILK-BONE brand. Smucker does not have a registered

trademark for the term "pill pouches," but instead claims to use the term merely as a description of the product's purpose and characteristics.

Mars filed its complaint on November 21, 2016, asserting three claims: trademark infringement under the Lanham Act; false designation of origin, false description, and unfair competition under the Lanham Act; and common law trademark infringement and unfair competition. On February 3, 2017, Smucker filed an answer to the complaint and asserted three counterclaims against Mars. First, Smucker seeks a declaration that its use of the term "pill pouches" is a non-trademark use. Second, Smucker seeks a declaration that it has not infringed Mars's trademark rights. Finally, Smucker requests that this Court cancel Mars's registered Pill Pockets trademark on the grounds that the trademark has become a generic, descriptive name for this type of product.

Smucker filed a Motion for Summary Judgment on April 10, 2017, which was initially argued on May 31, 2017, and continued at that time until close of discovery. On July 18, 2017, after discovery, Smucker filed a supplemental brief for its Motion for Summary Judgment, and Mars filed its own Motion for Partial Summary Judgment as to Smucker's cancellation counterclaim on August 3, 2017. Oral arguments for both motions were heard on August 25, 2017.

Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if the pleadings and evidence show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden to show that a genuine dispute of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The Court finds there is no genuine dispute of material fact and this case is ripe for summary judgment.

The Lanham Act requires plaintiffs to satisfy a two-prong test to prevail on a trademark infringement or unfair competition claim. See 15 U.S.C. §§ 1114(1), 1125; U.S. Search, LLC v. U.S. Search.com Inc., 300 F.3d 517, 523 (4th Cir. 2002). The plaintiff must "first and most fundamentally prove that it has a valid and protectable mark," and second, it must "show that the defendant's use of an identical or similar mark is likely to cause confusion among consumers." U.S. Search, 300 F.3d at 523 (quoting MicroStrategy Inc. v. Motorola, Inc., 245 F.3d 335, 341 (4th Cir. 2001)). The test for common law

trademark infringement and unfair competition under Virginia law is "essentially the same" as the test under the Lanham Act. Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 930 n.10 (4th Cir. 1995) (noting that "both address the likelihood of confusion as to the source of the goods or services involved.").

Mars has met the first prong of this test: it owns two federal trademark registrations for the Pill Pockets mark. However, Mars has failed to submit any evidence that there is any likelihood of confusion in the marketplace.

In determining whether a likelihood of confusion exists, the Fourth Circuit has identified nine factors to be considered:

> (1) the distinctiveness of the senior mark;
> (2) the similarity of the two marks;
> (3) the similarity of the goods or services that the marks identify;
> (4) the similarity of the facilities employed by the parties to transact their business;
> (5) the similarity of the advertising used by the parties;
> (6) the defendant's intent in adopting the same or similar mark; . . .
> (7) actual confusion . . . [;]
> (8) the quality of the defendant's product[;] and
> (9) the sophistication of the consuming public.

Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 465 (4th Cir. 1996) (internal citations omitted) (citing Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984)). In any given case, certain factors may be more or less relevant given the unique facts presented. Pizzeria Uno, 747 F.2d at 1527.

Analyzing the above factors, Mars has not presented evidence sufficient to establish a genuine dispute of fact as to the likelihood of confusion. With regard to the similarity of the marks and advertising, the visual appearances of the marks on the parties' product packaging and advertising are dissimilar: they use different fonts, different color schemes, and they are accompanied by the prominent display of their respective brand names to indicate the products' origins (GREENIES and MILK-BONE).

Most importantly, Mars has failed to demonstrate actual confusion. Although no one factor is dispositive on its own, the actual confusion factor is "often paramount" in determining likelihood of confusion. Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 804 (4th Cir. 2001).

Smucker has provided survey evidence demonstrating a 0.0% rate of actual confusion among consumers between Mars's Pill Pockets and Smucker's Pill Pouches. Such survey evidence is commonly presented and relied upon in this District for determining likelihood of confusion. See George & Co., LLC v. Imagination Entertainment Ltd., 2008 WL 2883771 at *3 (E.D. Va. July 25, 2008), aff'd, 575 F.3d 383 (4th Cir. 2009). In contrast, Mars has not presented any survey evidence supporting a likelihood of confusion. Although it is true that it is not necessary for the plaintiff to present a survey to prove

likelihood of confusion, Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc., 87 F.3d 654, 661 (4th Cir. 1996), the lack of such a survey can greatly hinder the plaintiff's case since the plaintiff has the burden of proof. See George & Co., 2008 WL 2883771, at *3. Here, Mars's failure to present any survey to counter Smucker's survey is itself evidence that there is no likelihood of confusion. See Ciphertrust, Inc. v. Trusecure Corp., No. 1:04-cv-1232, 2005 U.S. Dist. LEXIS 46322, at *46 (E.D. Va. Nov. 28, 2005) ("[F]ailure to offer a survey showing the existence of confusion is evidence that the likelihood of confusion cannot be shown.") (quoting Essence Comm'ns, Inc. v. Singh Indus., Inc., 703 F. Supp. 261, 269 (S.D.N.Y. 1988)).

The only evidence of actual confusion Mars has presented is internal communications between Smucker employees, ostensibly showing that Smucker's own employees confuse the two products, and six instances of internet posts that purportedly show consumer confusion. This evidence, however, fails to create a genuine dispute of material fact.

First, the evidence regarding internal communications between Smucker employees is largely irrelevant. The relevant inquiry in this analysis is whether there is confusion among consumers in the marketplace. "Trademark infringement protects only against mistaken purchasing decisions and not against

confusion generally." Ciphertrust, 2005 U.S. Dist. LEXIS 46322, at *46. Furthermore, the evidence presented does not show that Smucker's employees were actually confused as to the source or origin of Smucker's Pill Pouches product. Instead, it demonstrates only that the employees use the term "pill pockets" as a generic, descriptive term for that category of products.

Second, the internet posts submitted by Mars are insufficient to demonstrate actual confusion. The posts show nothing more than consumers using the term "pill pockets" in a descriptive sense. The posts do not demonstrate that consumers are regularly confused about the source or origin of the parties' respective products. In any event, the six internet posts, standing on their own, are de minimis in light of Mars and Smucker's high volumes of sales and marketing. See George & Co., 575 F.3d at 398 ("Evidence of only a small number of instances of actual confusion may be dismissed as de minimis.") (citing Petro Shopping Centers, L.P. v. James River Petroleum, Inc., 130 F.3d 88, 95 (4th Cir. 1997)). Thus, this evidence is not sufficient to create a genuine dispute of material fact.

Additionally, Smucker's use of the term "pill pouches" is a fair use of the term as a non-trademark description of its product's design, purpose, and characteristics. Section 33(b)(4) of the Lanham Act allows a defendant to assert as a defense that an allegedly infringing term is used "otherwise than as a mark,

. . . [as] a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party." 15 U.S.C. § 1115(b)(4).

Smucker does not have a registered trademark for Pill Pouches. Smucker does not use a ™ designation on its Pill Pouches label. See George & Co., 575 F.3d at 401 ("While not dispositive, the absence of a ™ designation is telling."). Smucker's use of the term "pill pouches" is not used to indicate either Smucker or Mars as the source of the product, but rather to describe the purpose, function, and characteristics of the product. See Id.

The Fourth Circuit has affirmed a grant of summary judgment in favor of a defendant where the evidence clearly indicated that the defendant's use of a term was a fair use in good faith and the plaintiff failed to present sufficient facts to create a genuine issue of material fact. Schafer Co. v. Innco Management Corp., 995 F.2d 1064 (4th Cir. 1993), aff'g 797 F. Supp. 477 (E.D. NC 1992). In Schafer Co., the court found that the defendant's use of an allegedly infringing term was a fair use where the term was used for its primary descriptive meaning that preexisted the plaintiff's trademark, the visual depiction of the term did not resemble the visual depiction of the plaintiff's trademark, and the defendant's use of the term was accompanied by the prominent display of its own tradename and

logo to avoid consumer confusion. The facts here are similar: Smucker's use of the term "pill pouches" alludes to that term's primary meaning to describe the product's design, function, and characteristics; the visual appearances of Smucker's Pill Pouches label and Mars's Pill Pockets mark are dissimilar; and Smucker's product prominently displays the MILK-BONE name and logo to avoid consumer confusion as to origin.

Mars has asserted that Smucker's use was in bad faith due to its failure to cease and desist the launch of its Pill Pouches product upon receiving Mars's cease and desist letter. However, this is not sufficient to constitute bad faith where the terms used by both parties are descriptive. See, e.g., Wonder Labs, Inc. v. Proctor & Gamble Co., 728 F. Supp. 1058, 1064 (S.D.N.Y. 1990) (comparing the terms "DENTISTS CHOICE" and "the dentists' choice" and granting summary judgment to defendant on fair use, despite plaintiff's assertion of bad faith due to failure to cease and desist).

Thus, Mars's claims for trademark infringement, unfair competition, and related claims all fail as a matter of law, and Smucker is entitled to summary judgment on those claims. Since this Court has determined that there is no threat of trademark infringement, there is no longer a case or controversy between the parties to support this Court's adjudication of the remaining claims.

For the foregoing reasons, this Court finds that summary judgment should be granted in favor of the Defendants, and the Defendants' counterclaim for cancellation of the Plaintiffs' trademark should be dismissed. An appropriate order shall issue.

                                      *Claude M. Hilton*
                                  CLAUDE M. HILTON
                                  UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
September 27, 2017